# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KEVIN PATRICK BAKER,       )
        )
     Plaintiff,       )
        )
     v.       ) Case No. 05-CV-1352 (RCL)
        )
ALSTOM TRANSPORTATION, INC.,       )
        )
     Defendant.       )
_____)

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff Kevin Patrick Baker, through his undersigned counsel, hereby moves the Court to enter a Protective Order to preclude Defendant ALSTOM Transportation, Inc. from issuing subpoenas to plaintiff's current employers, and in support of this motion states:

### Plaintiff's Claims Herein

This is an action for unpaid overtime under the Fair Labor Standards Act (FLSA). Plaintiff seeks overtime backpay for the period of April 15, 2002, to June 28, 2004.  See Complaint ¶¶48, 57.  Defendant's principal defense is that it properly classified plaintiff as "exempt" under the FLSA.  See Answer ¶¶14, 22, 29-33, 51.  Although plaintiff believes he was wrongfully discharged, see Complaint ¶43, the Complaint does not contain any claim with respect to the discharge.  Cf. Complaint ¶¶50-57.  Nor could he make any claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. ¶¶2000e-2, or the District of Columbia Human Rights Act, D.C. Code §2-1402(11) (2004), because the limitations periods for such claims have expired.

<u>The Parties' Prior Discovery</u>

On August 15, 2005, plaintiff served defendant with Plaintiff's First Set of

Interrogatories, Request for Admissions, and Request for Documents.  The date for defendant to

serve responses to the discovery requests was no later than September 17, 2005.[1]  On September

20, defendant served responses to plaintiff's Request for Admissions,[2] but did not then respond

to plaintiff's other discovery requests.  It was not until September 22, 2005, that defendant

responded to plaintiff's Requests for Documents and October 4, 2005, after plaintiff sent a

"deficiency letter" to defendant on September 27, 2005, that it finally responded to Plaintiff's

First Set of Interrogatories.[3]  Defendant did not formally or informally ask for extensions of time

to serve its discovery responses.

Meanwhile, on August 22, 2005, without prior communication with plaintiff's counsel

about whether the time would be convenient for plaintiff or them, defendant's counsel noticed

plaintiff's deposition for September 24, 2005.  That date was inconvenient for plaintiff and his

counsel, and after they objected, defendant's counsel postponed his deposition until September

28, 2005.

Defendant did depose plaintiff on September 28, 2005.  In his deposition defendant's

counsel asked him whether he had obtained new employment since defendant discharged him.

Plaintiff responded that he now had two jobs --Science Applications International Corporation

(SAIC) and at the National Railway Passenger Corporation (Amtrak).  See Baker Depo. (Ex. 1

hereto) 71, 77.  In addition, plaintiff answered questions, over objections by his counsel, about

---

[1]  The requests were sent by facsimile transmission and by mail.
[2]  In plaintiff's view, most of defendant's responses to his Request for Admissions were not
responsive, so defendant thereby admitted many of plaintiff's Request for Admissions, as will be
explained in a forthcoming motion to compel which plaintiff intends to file this week, absent
receipt of more complete discovery responses from defendant.
[3]  The incompleteness of these responses will be discussed in Plaintiff's Motion to Compel.

his hiring by and working conditions at those employers, his supervisors there, and his status

(hourly, not salaried).  See Baker Depo. 71-79 (Ex. 1 hereto).

On October 13, defendant's counsel sent plaintiff's counsel a letter asking them to verify

the addresses of plaintiff's current employees, so it could issue subpoenas to them.  See Ex. 2

hereto.  On October 17 plaintiff's counsel responded and objected to the subpoenas, on the

grounds that they failed to see any possible legitimate value in subpoenaing any records from

Mr. Baker's current employers.  See Ex. 3.  Plaintiff's counsel reminded defendant's counsel that

plaintiff does not claim a wrongful discharge, "so whatever income he made after his termination

from ALSTOM is irrelevant to any claims or defenses in this case."[4]  He added:

> Nor would there be any relevance in the way he is classified by other employers.  In
> short, we cannot imagine how such subpoenas could possibly produce any documents
> which are relevant to any claims or defenses in this case or which could possibly lead to
> the discovery of admissible evidence.

Plaintiff's counsel further stated (Ex. 3):

> On the other hand, we can readily anticipate that such subpoenas [to his current
> employers] would embarrass and harass our client.  There is no need for his current
> employers to know that he is suing a former employer for overtime backpay.  Subpoenas
> to them could very well produce reprisal against him, or at least a new, unfavorable
> perspective on this relatively new employee.

In conclusion, plaintiff's counsel wrote (Ex. 3):

> We urge you not to issue subpoenas to Mr. Baker's current employers.  If you do not
> agree, tomorrow we will file a motion for a protective order.  We do not want to make
> you appear obnoxious to the Court, but if we must file such a motion, we will need to
> seek sanctions for having to file it.  And, if you nonetheless issue the subpoenas before
> the Court rules on our motion, we will move to quash them.

On the same day (October 17), plaintiff's counsel sent defendant two other letters, including one

asking defendant to identify a convenient date for deposing two 30(b)(6) witnesses.  See Ex. 4.

---

[4]   The letter contained an obvious typo --omission of the word, "not," after "does."

Later that day one of defendant's attorneys responded to the letters in an e-mail stating: "Be advised that each will be responded to in appropriate fashion."  See Ex. 5.

On October 20, since defendant's counsel had not sent them any substantive response to any of the letters, including their letter regarding the subpoenas duces tecum, plaintiff's counsel wrote another letter requesting assurances that defendant would not issue subpoenas duces tecum to Mr. Baker's current employers.  See Ex. 6.

On Friday afternoon, October 21, defendant's counsel finally responded to the letters requesting that they not issue subpoenas duces tecum to plaintiff's current employers.  See Exhibit 7.  In their letter, defendant's counsel stated, <u>inter alia</u>, "I will proceed to subpoena his employment records and will send you copies of the production."[5]

In a telephone conversation on October 24 plaintiff's counsel advised defendant's counsel that they were planning to file this motion on October 25, but defendant's counsel reiterated their intent to issue the subpoenas.  Then defendant's counsel advised that they would defer issuing the subpoenas, pending the result of settlement discussions.  Those discussions have continued since October 24 and ended in an impasse today.  During that period plaintiff's counsel has continued to act for reassurance that defendant would not issue the subject subpoenas.  However, defendant has merely responded:  "If negotiations fail, I am prepared to issue the appropriate subpoenas and/or cite the basis and authority for our efforts to the Court." Ex. 8 hereto.

On November 1, 2005, plaintiff's counsel again asked defendant's counsel if they were intent on issuing the subpoenas if negotiations reached an impasse and requested reassurance that

---

[5]  Defendant's rationale for insisting on issuing the subpoenas is discussed (and refuted) below.

they would not do so. Defendant's counsel has not provided the requested reassurance.

Therefore, plaintiff files this motion to request protection against the subpoenas.

II. <u>ARGUMENT</u>

A. <u>Applicable Principles</u>

As the Court is aware, "Generally, courts construe the scope of discovery liberally in order to ensure that litigation proceeds with 'the fullest possible knowledge of the issues and facts before trial.'" *State of Wyoming v. U.S. Dep't of Agriculture,* 208 F.R.D. 449, 452 (D.D.C. 2002), quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947), and citing FED. R. CIV. P. 26(b)(1). "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Graham v. Casey's General Stores, Inc.*, 206 F.R.D. 251, 253 (S.D. Ind. 2002.).

> Under FED. R. CIV. P. 26(b)(2), however, "[c]ourts may limit discovery if --
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

As the Court explained in *State of Wyoming*, 208 F.R.D. at 452, "Courts can limit discovery to 'that which is proper and warranted in the circumstances of the case.'" (quoting *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)). "Under Rule 26(b)(2), the Court must weigh the burden or expense of proposed discovery and its likely benefit by taking into account 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Graham*, 206 F.R.D. at 254, quoting *Simon Property Group L.P. v. my*

*Simon, Inc.,* 194 F.R.D. 639, 640 (S.D. Ind. 2000).  Also, as the Court has stated, "Rule 26(c) of

the Federal Rules of Civil Procedure provides that '[u]pon motion by a party or by the person

from whom discovery is sought' and 'for good cause shown,' a district court 'may make any

order which justice requires to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense."  *Cobell v. Norton*, 213 F.R.D. 48, 52 (D.D.C. 2003).

Where the issuance of a subpoena upon a third party would not produce admissible

evidence, but would cause annoyance or embarrassment to a party, the Court will protect the

party against issuance of such a subpoena and require less intrusive means of obtaining the same

information.  *See*, *e.g.*, *Graham*, 206 F.R.D. at 254 (granting motion to quash subpoenas to

present and former employers for plaintiff's medical records in a discrimination case, since,

while plaintiff's medical history is important to her disability discrimination claims, defendant

could have obtained the records from her medical providers "and had no need to take the more

intrusive step of seeking this medical information from her employers.").

B.  The Court Should Issue a Protective Order Here

Plaintiff requests that the Court, applying the foregoing rules and principles, issue an

order precluding defendant from subpoenaing plaintiff's current employers for his personnel

records since those records cannot possibly lead to the discovery of admissible evidence and the

contact by defendant's attorneys could well cause him embarrassment and even jeopardize his

current employment.

As stated above, there is no possible legitimate value in subpoenaing any records from

Mr. Baker's current employers.  Unlike cases where the plaintiff complains about a

discriminatory or retaliatory discharge, and the plaintiff's interim earnings after discharge are

vitally important to determining any backpay liability, what succeeding employers have paid

plaintiff here is of no possible relevance in this case, since he does not claim a wrongful

discharge.  Nor would there be any relevance in the way other employers have classified him.

What is most important to the single claim in this case is whether <u>ALSTOM</u> properly classified

him as exempt from overtime pay, and what other employers did in that regard after his

employment by ALSTOM is of no possible probative value here.  In short, the subpoenas

discussed by defendant could not possibly produce any documents which are relevant to any

claims or defenses in this case or which could possibly lead to the discovery of admissible

evidence.

On the other hand, such subpoenas could easily embarrass and harass plaintiff.  He has

been employed by both SAIC and Amtrak since September 2004.  See Baker Depo. 76, 77 (Ex.

1).  There is no need for his current employers to know that he is suing a former employer for

overtime backpay.  Subpoenas to them could very well produce reprisal against him, or at least a

new, unfavorable perspective on this relatively new employee.

In its letter of October 21, defendant's counsel contended that, based on how it perceives

plaintiff's educational representation to defendant, ALSTOM wants to subpoena plaintiff's

employment records from his new employers and "will continue to examine how Mr. Baker has

represented his educational background to ALSTOM, and other parties, <u>including all of his</u>

<u>present and prospective employers</u> through discovery" (Ex. 7; emphasis added).  In support of

this exuberant desire to proliferate subpoenas *ad infinitum*, defendant's counsel gives this

circuitous reasoning:  "The relevance of  such documents is apparent on the face of Plaintiff's

Complaint and the Answer."  Ex. 7 hereto.  This is no reasoning at all.  As explained above, what

is critical is whether ALSTOM properly classified plaintiff as exempt from the FLSA, not how

any other employer may have classified him or what he may have told any other employer,

particularly any succeeding employer, about his educational background. Even assuming

*arguendo* that plaintiff told a later employer that he had a bachelor's degree (which he does not),

that could not possibly be relevant to why ALSTOM regarded him as exempt and could not even

impeach plaintiff since it is what he told ALSTOM before and during his employment that is

relevant here.

As one federal court stated upon granting a motion to quash a similar subpoena issued to

a plaintiff's current employer, a plaintiff has "a legitimate concern that a subpoena sent to her

current employer under the guise of a discovery request could be a tool for harassment and result

in difficulties for her in her new job." *Graham*, 206 F.R.D. at 256. Explained another court:

> By issuing a subpoena to plaintiff's current employer, defense counsel caused plaintiff to
> worry about her continued employment relationship, in a manner amounting to
> harassment. Because of the direct negative effect that disclosures of disputes with past
> employers can have on present employment, subpoenas in this context, if warranted at all,
> should be used only as a last resort.

*Conrod v. The Bank of New York*, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y. 1998), at *4.

(emphasis added).

In a case where the issue was whether the defendant discriminatorily discharged the

plaintiff, *Ward v. Digex, Inc.*, CAL No. 03-00908 (June 2004), the Circuit Court for Prince

George's County (Krausner, J.) granted a motion for a protective order and to quash subpoenas

duces tecum which a defendant wanted to serve on a current employer, because the threat of

embarrassment outweighed any possible probative value of the subpoenaed records. *A fortiori,*

since interim earnings at subsequent employees are irrelevant here, there is even more reason to

grant plaintiff's motion in this case.

WHEREFORE, plaintiff respectfully requests that the Court issue a Protective Order to

prohibit defendant, under pain of sanctions, from issuing subpoenas duces tecum to plaintiff's

current employers, so as to protect plaintiff from "annoyance, embarrassment, oppression."

(FED:R.CIV.P. 26(c)).

Respectfully submitted,

_____/s/_____
Alan Banov (D.C. Bar No. 95059)
Norberto P. Salinas (D.C. Bar No. 474710)
ALAN BANOV & ASSOCIATES
1819 L Street, N.W., Suite 700
Washington, D.C. 20036-3830
(202) 822-9699
Fax: (202) 842-9331
ab@banovlaw.com
Attorneys for Plaintiff