**U.S. Department of Labor**

Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



CASE NO.: 2005 SOX 105

In the Matter of

    JOHN AMBROSE
    Complainant

       v.

    U.S. FOODSERVICE, INC. &
    ROYAL AHOLD N.V.
    Respondents

Appearances:    Ms. Deborah Thompson Eisenberg, Attorney
                Mr. C. Christopher Brown, Attorney
                For the Complainant

                Ms. Connie N. Bertram, Attorney
                Ms. Patricia Exposito, Attorney
                For the Respondents

Before:          Richard T. Stansell-Gamm
                Administrative Law Judge

## ORDER- 
## APPROVAL OF MOTION TO QUASH SUBPOENAS

    On December 9, 2005, Counsel for the Respondents, Ms. Exposito, had two subpoenas delivered to the Office of Administrative Law Judges ("OALJ") for my signature. On December 12, 2005, I signed the two subpoenas for W.S. Lee & Sons ("Lee") and Sysco Corporation ("Sysco") to provide documents relating to the Complainant.

    Shortly after the subpoenas were picked up by courier, I received from Complainant's counsel, Mr. C. Christopher Brown, a Motion to Quash Subpoenas[1] relating to Lee and Sysco. Based on the motion, I directed Respondents' counsel to hold the signed subpoenas pending my determination on the motion.

---

[1] The Motion also requested a Protective Order preventing the Respondent from contacting any of the Complainant's prospective employers. Based on Ms. Exposito's representations during a subsequent telephone conference call with the parties' counsel, I need not address the request for a protective order. My sole inquiry relates to the Motion to Quash Subpoenas.

## Background

On February 24, 2005, through counsel, Mr. Ambrose filed a complaint with the Secretary of Labor, through the Regional Administrator, Occupational Health and Safety Administration, alleging a violation of the employee protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, (Public Law 107-204), 18 U.S.C. § 1514A ("Act" or "SOX"). In his complaint, Mr. Ambrose alleged that U.S. Food Service, Inc. ("USF") had suspended and eventually terminated his employment in retaliation for his internal reports of insider trading and testimony before the Securities and Exchange Commission ("SEC"). On July 21, 2005, the Regional Administrator dismissed the complaint. Through counsel, on August 19, 2005, Mr. Ambrose submitted a timely appeal and the case was forwarded to the Office of Administrative Law Judges for a hearing. Presently, I have a set a hearing date of January 31, 2006 for this case in Washington, D.C.

## Parties Positions

*Complainant*[2]

The two subpoenas should be quashed for several reasons. First, the two subpoenaed companies are competitors of the Respondents and potential future employers of Mr. Ambrose. Additionally, Lee is presently a vendor for Mr. Ambrose's restaurant. Consequently, the requested discovery has the potential to adversely affect Mr. Ambrose's reputation and opportunities with the future employers and one of his vendors.

Second, the Respondents are relying on no more than "hunch and rumor" as a basis for pursuing this discovery.

Third, the requested discovery has little relevance to the present discrimination litigation. Federal courts have not permitted subpoenas that may interfere with future employment absent a showing of relevance and independent evidence.

Fourth, the after-acquired evidence doctrine is inapplicable since *McKennon v. Nashville Banner Publishing*, 513 U.S. 352 (1995), indicated such evidence is inapposite in mixed motive cases.

Fifth, to the extent the information has any relevance, the Respondents may discover it through less intrusive means by seeking discovery directly from the Complainant about his contacts with the two companies.

---

[2] December 12, 2005 Motion; December 16, 2005 Supplemental Memorandum; and, December 20, 2005 deposition excerpt submission.

*Respondents*[3]

The two subpoenas to Sysco and Lee relate to relevant information and are reasonably calculated to lead to discoverable admissible evidence. During his employment with USF, Mr. Ambrose was also involved in the operation of a restaurant. Mr. Ambrose's employment termination related to his operation of that restaurant. Sysco and Lee are vendors with whom Mr. Ambrose may have entered into business arrangements on behalf of the restaurant. Such arrangements would indicate a much greater involvement with the restaurant than represented to USF by Mr. Ambrose. Further, such documentation may demonstrate that Mr. Ambrose was meeting with Sysco and Lee rather than conducting USF business.

Mr. Ambrose has also claimed that USF's action caused damage by delaying the opening of his restaurant. Since Sysco and Lee are alternative sources for supplies to the restaurant, documentation about dealings with Mr. Ambrose would be relevant on this damage issue.

Next, the subpoenas to Sysco and Lee will help evaluate Mr. Ambrose's representation that his non-solicitation agreement precluded his employment with the two companies. Since the non-solicitation agreement only prevented Mr. Ambrose from contacting USF customers, and did not stop him from working with either Sysco or Lee, the subpoenas relate to the accuracy of his statements to the two companies about the actual effect of his agreement.

Finally, the subpoenas have relevance in regards to the after-acquired evidence doctrine in *McKenna*. Based on customer reports that Mr. Ambrose was attempting to steal business from USF in collusion with Sysco and Lee, the Respondents seeks the subpoenas to establish whether Mr. Ambrose violated his non-solicitation agreement. Such after-acquired evidence would have a significant impact on the damages available to Mr. Ambrose.

*Discussion*

Upon consideration of the parties' positions, I am presented with a balancing of competing interests. I am not unmindful of the Respondents' right to fully develop their case through full and open discovery. However, I find the Respondents have not sufficiently demonstrated significant basis or relevance in regards to the requested subpoenas, particularly in light of the clear potential for adverse impact on Mr. Ambrose's reputation by subpoenaing potential employers in regards to his whistleblower complaint against USF.

Most of the rationale to support subpoenas concerning information Sysco and Lee may have about Mr. Ambrose's activities in regards to the restaurant during his employment with USF is speculative. Mr. Ambrose's purported misrepresentations to Sysco and Lee about the effect of his non-solicitation agreement moves the litigation too far down a tangential path of what may or may not have motivated Sysco and Lee not to offer Mr. Ambrose a job after his termination. Finally, while after-acquired evidence of misconduct may be relevant in a SOX

---

[3] December 14, 2005 Opposition to Respondent's Motion and December 16, 2005 Supplemental Opposition to Respondent's Motion.

whistleblower case,[4] USF's need to draw Sysco and Lee into this litigation about potential misconduct is unnecessary since apparently USF customers are available to present evidence of alleged impermissible solicitations.

     Accordingly, the document subpoenas to Sysco and Lee which I signed on December 12, 2005 are quashed and no longer have any effect. Respondents' counsel is directed to completely line through the subpoenas in its possession.

**SO ORDERED:**

*Richard T. Stansell-Gamm*
RICHARD T. STANSELL-GAMM
Administrative Law Judge

Date Signed: December 22, 2005
Washington, D.C.

---

[4] The *McKenna* court discussed after-acquired evidence of employee misconduct in two contexts. As to the determination of an employer's liability, the court concluded it had no bearing in the case before it since one of the given premises in the case was that the sole motive for the discharge was illegal discrimination. Justice Kennedy's remarks about mixed motive cases at best only reflected his belief that applying the principle to ascertain an employer's motive at the time of discharge is problematic. The main issue in *McKenna* was the impact that after-acquired evidence of wrongdoing would have on damages given a determination that illegal discrimination had occurred. Viewing reinstatement and front pay as equitable remedies, the court held after-acquired evidence of wrongdoing that would have justified termination would preclude those two equitable remedies. On the other hand, recognizing that the complainant also suffered an illegal employment termination, the court indicated back pay from the time of the discharge until the discovery of the after-acquired evidence may still be a viable remedy. Consequently, though I am not certain of the extent that after-acquired evidence may have on a SOX case-in-chief, it remains an important consideration in assessing both equitable relief and compensatory damages.