# EXHIBIT

# 1

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEVIN PATRICK BAKER,     )
                     )
     Plaintiff,         )
                     )
   vs.              )   Case No. 05-CV-1352 (RCL)
                     )
ALSTOM TRANSPORTATION INC.,  )
                     )
     Defendant.       )
                     )

**PLAINTIFF'S SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET
OF INTERROGATORIES TO PLAINTIFF**

Plaintiff Kevin P. Baker hereby supplements his answers to Defendant's First Set of Interrogatories to Plaintiff:

### A. INTRODUCTION

1.    The information supplied in these Supplemental Answers is not based solely on the knowledge of the executing party, but includes the knowledge of the party, his representatives, and attorneys, unless privileged.

2.    The word usage and sentence structure may be that of the attorneys assisting in the preparation of these Supplemental Answers and therefore do not purport to be the precise language of the executing party.

3.    These answers were prepared without benefit of certain documents and information in defendant's possession, which plaintiff is seeking in discovery.

4.    Since many of defendant's interrogatories elicit responses related to answers given to other interrogatories, the entire response must be read as a whole and, where appropriate, each interrogatory response must be deemed to incorporate by reference responses to other interrogatories which refer to the same subject matter.

## B. GENERAL OBJECTIONS

Plaintiff, by his counsel, generally objects to the discovery requests as follows:

1.      To the extent they request attorney work-product information from plaintiff's counsel, that information is privileged.

2.      Plaintiff objects to producing any documents which have been prepared by him or his counsel in preparation for or in furtherance of this litigation (and which have not been reduced to pleadings); notes taken by his attorneys of communications between them; correspondence sent in confidence between them in preparation for or in furtherance of this litigation; and pleadings in progress which have not been completed.

Without waiving the right to maintain the foregoing objections, plaintiff responds as follows to the interrogatories:

## **INTERROGATORIES**

**Interrogatory No. 1**:   Identify each person who has information referring or relating to the subjects of the *Complaint*, or who may have discoverable information that you may use to support the claims that you allege in the *Complaint*, whether or not you intend to call that person as a witness at trial, and describe the facts known to each such person.

**ANSWER:**  I have information relating to the complaint and other discoverable information.  See my deposition.

The following also have information referring or relating to the subjects of the Complaint.  I may call any or all of them to be witnesses at trial.

Curtis Moses – has information about my qualifications for my job, my duties, my overtime work, my overtime pay, and other subjects about which he testified in his deposition.

Matt Rivera – has information about my work for ALSTOM through Tech Aid, his hiring me for ALSTOM, my qualifications for the position, my overtime work, my overtime pay, and the audit of my position.

Gabriel Amar – has information about my work for ALSTOM, my qualifications for the position, my overtime work, my overtime pay, the audit of my position.

Pete Dimola – has information about my work for ALSTOM, my qualifications for the position, my overtime work, my overtime pay, the audit of my position.

Kofi Owusu-Ansah – has information about his qualifications for the job, his duties, his overtime work, his overtime pay, my duties, and my overtime work.

Saluka Kulasinghe – has information about his qualifications for the job, his duties, his overtime work, his overtime pay, my duties, and my overtime work.

Ellie Snyder – has information about my hiring and my job duties, my personnel record, my overtime, and any communications with anyone at ALSTOM regarding a 2004 job audit at ALSTOM.

Louis Gomes – has information about my duties and those of others who were similarly situated at ALSTOM and the facts surrounding a job audit ALSTOM conducted in 2004.

Beverly Adams Baker – has information about ALSTOM's 2004 audit, the results of the audit, and some of the overtime that I worked.

Brian Chickey – Mr. Chickey works for TAC Worldwide (parent company of Tech Aid) and was involved with my hiring by ALSTOM as a temporary employee. He is aware that I am not an engineer by profession.

Douglas Perry – Mr. Perry works for TAC Worldwide (parent company of Tech Aide) and was involved with my hiring by ALSTOM as a temporary employee. He is aware that I was not an engineer by profession.

**Interrogatory No. 2:**  Identify all documents, data compilations or tangible things that are in your possession, custody, or control which you rely upon in support of your claims in this action.

**ANSWER**:  Defendant has documents which support my claims.  It has provided some of them.  In addition to defendant's documents, I have provided copies of all non-privileged documents which support my claims and which I have.  See the CD which my counsel has provided to defendant's counsel.

**Interrogatory No. 3:**   Set forth in detail the facts which you rely upon in support of your claim in this action.

**ANSWER:**  The short answer is that defendant incorrectly classified me as exempt from overtime compensation, when it should have classified me as non-exempt, and wrongfully failed to pay me overtime pay for overtime hours which I worked for defendant.  The detailed response is as follows:

As I explained in my deposition, I have associate's degrees, and have not earned enough credits for a bachelor's degree.  I have about 110 credits towards a bachelor's from SUNY Binghamton, which requires 122 or 125 credit hours.  See my deposition, pp. 20-21, 24, 25, 27-29, 43-45, 56, 58, 69-70, 127.  Courses, training, and on-the-job experience have helped me become good at what I do.  However, I am not a professional engineer.  I do not have any certificates or registrations in the field.  In all of the positions I held before working for ALSTOM, I was an hourly employee and earned overtime pay for overtime work and I was never classified as a salaried professional engineer.  I was more of a technician than a professional engineer.  See my deposition pp. 47, 50, 51, 53, 63, 64).  Virtually all my prior positions were as an electronics technician or an equivalent position assisting electrical or electronics engineers.  Please see my deposition, pages 20-21, 24, 25, 27-29, 43-45, 56, 58, 63-64, 68-70.  Also see my answers to Interrogatory No. 18.

I first interviewed with ALSTOM in early March 2000 as a temporary agency employee through Tech Aid.  In the application process, I represented that I had associate's degrees, but

not a bachelor's degree.  Brian Chickey and Douglas Perry interviewed me.  In answer to their

questions, I specifically told the interviewers that I had no bachelor's degree.  I said I had

attended Binghamton University, but had not graduated.  Later I had a second interview, which

included ALSTOM employees Alfred Keefe, Joseph Cruz, and Matthew Rivera.  I discussed my

educational background with the ALSTOM employees.  I specifically recall telling Matt Rivera

that I had associates degrees and military training and that I had attended SUNY Binghamton

and taken engineering courses there, but had not completed all the course work for a bachelor's

degree.  Soon thereafter Tech Aid told me that ALSTOM would like me to start on March 6,

2000.  I started on that date and filled out an application as well as contractual documents with

Tech Aid at their Plymouth Meeting, PA office, after working my first day in Philadelphia with

ALSTOM.  It was at that time that Tech Aid told me that I would be considered to be on a temp-

to-perm basis if my contract extended past 6 months, and that ALSTOM could not hire me

directly prior to a six months commitment.  I was told that my title was Technician and that I

would be paid at the rate of $21 per hour and 1.5 times that rate for all hours in excess of 40 per

week.  Also see my deposition, pp. 71, 95-96, 98-105, 117-118, 121-123.

Defendant initially hired me as a temporary employee through Tech Aid.  From March

through October 2000 I worked for defendant as a technician.  My initial duties at ALSTOM

included testing high speed trains, collecting, fault monitoring, and doing routine repairs. Tech

Aid treated me as a non-exempt hourly employee and paid me overtime for my hours in excess

of 40 each week, as per their contract with ALSTOM.

In September 2000 Mr. Rivera and Mr. Moses approached me about becoming a direct

hire of ALSTOM.  They were apparently happy with my work as a Tech Aid employee for

ALSTOM.  See my deposition, pp. 119-120, 123.  In September Mr. Rivera talked about my

accepting a permanent position as either a salaried engineer or as an hourly technician. He said I would be doing the same job I had been doing as a Tech Aid temp, regardless of the title I chose. Mr. Rivera encouraged me to accept the engineering position, because, he said, management would look more favorably upon me and consider me for promotions and higher raises more quickly. In addition, Mr. Rivera told me that after six months, management would review my hours and adjust my salary to compensate for the overtime I worked. He said that, even though he was salaried and a manager, he was often paid overtime. During the course of the interview Mr. Rivera asked if I had a degree. I refreshed his recollection that I had an associate's degree and had nearly completed my credits for a bachelor's degree, but had not completed everything for a bachelor's degree. We talked about whether I would plan to take the necessary courses to graduate. Based on Mr. Rivera's representations, I accepted the position as an engineer. Mr. Rivera did not call the position 'electrical engineer"; he just called it "engineer." See my deposition, pp. 123-127. Mr. Moses was present during the entire course of this interview, but said very little, asked few questions, and only stated that he was pleased by my work performance. He was more of an observer, as I recall.

In October 2000 defendant hired me as a direct hire. It called me "exempt," but it should not have made me exempt because I was not a professional, executive, or administrative employee as those terms are used in the Fair Labor Standards Act. I had associates' degrees, not a bachelor's degree. My duties included testing electronics and/or electrical devices, running diagnostics on electronics and/or electrical devices, and repairing electronics and/or electronic devices.

On October 16, 2000, defendant sent me an offer letter (Def. Depo. Ex. 4), which I signed on October 27, 2000. The same day (October 27, 2000) I signed an Employment Application to

work for ALSTOM (Def. Depo. Ex. 3).  Accordingly, I completed the application after

ALSTOM had already offered me the subject position.  No resume was submitted at that time

because one was not required.

From January 2001 to August 2001, I often worked over nine hours a day, without a

lunch break (see my time records.)  The company knew I was working overtime and suffered and

permitted me to work overtime.  Defendant paid me overtime pay for all of my overtime work

during that period.

In April 2001, after being a permanent employee for six months, I submitted self-

evaluation forms in anticipation of a review.  On them I mentioned the overtime I had worked for

the benefit of the company.  (Defendant has these forms.)  In August 2001, defendant stopped

paying me overtime pay for the many hours of overtime I was working.

From August 2001 through December 2001, I worked nearly 160 hours of overtime to

complete projects within deadlines, documenting the overtime hours on my timesheet.

Defendant did not pay me overtime pay for any of that overtime work.

In November 2002, I indicated to Mr. Amar that I had been working overtime to

complete various Operational Commitments.  Mr. Amar promised that defendant would

compensate me for the overtime I worked.  However, defendant still did not pay me for the

overtime I worked.

In March 2003, Mr. Amar informed me that he wanted me to assume the Project Lead for

the Maryland High Horsepower Locomotive Contract (which involved the MARC trains).  Mr.

Moses put Mr. Amar's instruction in writing on August 14, 2003, by virtue of a Lotus Notes

email.  During that period, I still supervised no one, and my supervisor, Mr. Moses, remained the

customer's first point of contact and directed the work.  Mr. Amar managed the warranty aspect

and controlled company assets. It was not until much later, when I mentioned it and the corresponding lack of a pay raise or official letter to him in a phone conversation, that Louis Gomez indicated that Mr. Amar and Mr. Moses did not have the authority to promote me without his approval.

On several occasions including August 28, 2003, management forced me to work overtime. I also knew that if I failed to stay and repair a locomotive it could result in fines to ALSTOM from $3000-30,000 daily). On several occasions, ALSTOM told me that I would be paid for this overtime, either directly, as a bonus at the end of the project (which was in the near future), or by way of a raise.

Mr. Moses and Mr. Amar demanded that I stay until a job was completed on August 28, 2003. I did so with objections that I had already worked 20 hours overtime during that week (including 6 hours overtime unreported from the previous week). They stated I would be paid for overtime the period ending that week (not just for the day in question). Mr. Moses told me to change my FLSA code on that week's timesheet to "non-exempt." Mr. Moses signed the timesheet but approved only 8 of 28 hours of overtime that I worked in support of emergency situations or routine issues that period (week ending August 29, 2003). I was not paid any overtime for this work.

In March 2004, Pete Dimola (new Project Operations Manager & Eastern Regional Manager) asked me, as well as all other salaried personnel of the Northeast Corridor Project, to submit records of all of their hours of overtime worked in fiscal years 2002-2003. I did so and also submitted records documenting those hours. The records revealed that during those two fiscal years I worked 1212 hours of overtime and that defendant had not compensated me for that

overtime. Even after I submitted my records to Mr. Dimola, defendant still did not compensate me for any of the overtime I worked during the two fiscal years.

By contrast, other salaried personnel with college degrees (such as Saluka Kulasinghe & Kofi Owusu-Ansah) received checks for overtime compensation and were reclassified as "non-exempt."

Throughout my tenure with defendant, my scheduled workweek was 40 hours per week. However, I often worked uncompensated overtime. In fact, during my employment with defendant, I worked over two thousand hours of uncompensated overtime for it.

Defendant suffered or permitted me to work all that overtime; all of that work benefited defendant; it realized, or at least should have realized, that I was non-exempt; and it should have paid me overtime pay for all my overtime hours.

**Interrogatory No. 4:**    Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify, and the basis and reasons therefore; the data and other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a listing of all publications authored by the witness within the preceding ten years; the compensation to be paid to the witness for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

**ANSWER:**  At present I do not plan to call any expert witnesses.

**Interrogatory No. 5:**    Identify each job site wherein you were assigned to work from March 2000 to June 2004, to include in your Answer, the inclusive dates that you worked at each site, how you were compensated, identification of your job title, duties and responsibilities and the names of your managers/supervisors.

**ANSWER**:  I worked principally at the Acela Service Site in the District of Columbia, but occasionally traveled to Boston, New York, and Philadelphia. I cannot recall the dates when I worked at other sites, but ALSTOM should have the records to verify my dates at other locations. The daily reports should reflect my jobsites. Defendant has not yet sent me copies.

Defendant paid me by the hour for my work. It paid me overtime pay for overtime I worked between January and August 2001, but afterwards did not pay me overtime pay for the overtime work I worked after August 2001. I occasionally received compensatory time, but usually only for working on holidays and when my supervisor was reminded that company policy required it. However, on a few occasions ALSTOM gave me compensatory time (for example, after working a 20 or 30 hour shift, I might be allowed to take off work on the following day). I do not include those hours as part of my claim for uncompensated overtime hours.

For some of the specific days of compensatory time I received (because my claims concern the uncompensated (in any form) hours I worked), see the following:

1) On 6/02/02 I worked a 20-hour shift. This was a Sunday and I was scheduled for Monday and Tuesday off. I did not report for work on Wednesday, and instead of reporting 22 hours over-time worked, I reported my hours as follows, "Hours reported as worked on Wed 06/05/02 are actually hours compensation time for a 20 hour shift worked on Sun 06/02/02" (8 hours have been subtracted from above reported total for the extra day off), and 14 hours overtime were reported.

2) On my timesheet ending 8/16/02, "Hours overtime worked this period and excess hours overtime unreported last period = 45", and "Hours worked on 08/12/02 include 3 hours compensation time not included in overtime reported above." (a total of 8 hours worked on 8/12/02)

3) On my timesheet ending 12/20/02, I made the following notations, "Hours overtime worked this period and excess hours overtime unreported last period = 16", and "Hours worked on 12/10/02 include 8 hours compensation time included

in overtime reported above." This amounts to 8 hours overtime without compensation.

4) On Presidents' Day, 2/17/03, it was my regular day off. In accordance with ALSTOM policy, I opted to take an additional day off on 5/23/03.

5) On timesheet ending 4/25/03, I was able to work four10 hour days, including 2 of 5 hours overtime unreported the previous week, thus providing me with a comp. day.

6) On my timesheet ending 5/16/03, I was able to use 6 hours of overtime for an early leave on Friday of that week. However, I was not able to leave until after working 4 hours, and since the timesheet had already been signed and submitted, IU added the additional 2 hours to the following period.

7) On my timesheet ending 6/20/03, I was required to work 5 hours on my day off (6/14/03) and I took 4 hours off on 6/16/03. In addition to that 1 hour of uncompensated overtime, I worked 15 more hours overtime that period.

8) On 7/04/03 (the 4th of July), it was my regular day off. In accordance with Alstom policy, I opted to take an additional day off on 7/11/03.

9) On 7/14/03 I used 1 of 11 hours Overtime worked for an early leave (i.e., 7 hrs worked plus 1 hr. comp. time). Also of note, that the period, once again I had to stay longer than expected after submitting my timesheet on the last day of that period, and it was reported the same period as previously mentioned, for a total of 16 hours without compensation.

10) On 9/19/03 I submitted a timesheet with 10 hours overtime, and I used 8 of those hours as comp. time.

11) On 11/7/03 I submitted a timesheet with 11 hours overtime, and I used 8 of those hours as comp. time.

12) On 4/2/04 I submitted a timesheet with 21 hours overtime, and I used 4 of those hours as comp. time.

13) On 4/30/04 I submitted a timesheet with 11 hours overtime, and I used 8 of those hours as comp. time.

14) On 5/21/04 I submitted a timesheet with 8 hours overtime, and I used 8 of those hours as comp. time.

15) After already having to submit my timesheet for 5/28/04 as a holiday day off (since it and Monday, 31 May, were Alstom holidays, Monday being my normal day off, Memorial Day Weekend), I was required to work 5/28/04 (14.5 hours). In addition to that, I worked 36 hours overtime on the following 2 weeks. I was able to take one day off as compensation on Monday, June 7, 2004. I was never compensated for one of my holidays, as I should have been according to Alstom policy.

My job title was Electrical Engineer. My duties included the following: upon arrival, read e-mail, including reports from other sites and work directives from supervisors, managers, and customers; prioritize assigned and determine equipment availability; request permission to work on customer's equipment; gathered tools; and went to equipment's location.

My types of assignments included but were not limited to: download and analyze fault logs with Portable Test Equipment or MMAP (proprietary software); inspect equipment for defects; diagnose and repair faults; remove and install defective items; test devices on bench test equipment; modify and test system components and wiring; install modified components and test

for compliance; package and ship defective devices; record failures into access database; prepare daily/weekly reports in Lotus notes; populate Excel spreadsheets with various types of data.

My direct supervisor was Mr. Moses. I did not supervise anyone.

**Interrogatory No. 7:**[1] Identify (by stating the name, addresses, dates of employment, job titles, names of supervisor, and nature of work), each employer that you have worked for from June 2004 until present date, including all part-time employment and self-employment. Identify all documents referring or relating thereto and identify all persons with knowledge.

**OBJECTION**: Plaintiff objects to responding with respect to positions which he has held since defendant discharged him since the information about those positions is neither relevant to any claims or defense in this case nor reasonably likely to lead to the discovery of any admissible evidence. Thus, while positions he held <u>before</u> working for ALSTOM gave him knowledge and experience which helped him qualify for the position at ALSTOM, the jobs he has held since then cannot possibly be relevant to the claims and defenses herein or lead to the discovery of admissible evidence. However, without waiving these objections, plaintiff briefly responds as follows:

**ANSWER**: Since about September 13, 2004 I have worked as an electro-mechanical technician at SAIC and as an electrician at Amtrak in the Washington area since September 2004. See my deposition, pp. 71-81 for more details. SAIC; Army Research Laboratory; 2800 Powder Mill Rd.; Adelphi MD 20912 (work location); Amtrak; 1401 W St NE WDC (work location).

**Interrogatory No. 8**: Itemize all expenses and other economic damages, past, present and future, that you contend are a result of the claims that you raise against ALSTOM and as to each item claimed, identify the item, the amount claimed for that item, the method, if any, by which you computed the amount, the figures used in that computation, and the facts and assumptions upon which your claim is based.

---

[1]   There is no Interrogatory No. 6.

**ANSWER**:  I claim overtime backpay for the period of April 18, 2002, to June 28, 2004. I calculate the unpaid overtime as follows:  I reviewed my timesheets, on which I listed the overtime hours I worked.  I then summed up the overtime hours during that time period (1365).  I then multiplied the number of overtime hours I worked during each pay period during that time period by the overtime rate, which was 1.5 times my hourly rate.  My initial hourly rate was $26.442 (at $55,000 per year).  Thus, my initial overtime rate was $39.663.  My hourly rate as of April 1, 2002 was $27.938 (at $58,111).  Thus, my overtime rate during that period was $41.907. My final hourly rate was $28.776 (at $59,854 per year).  Thus, my final overtime rate was $43.164.  The range of uncompensated overtime pay defendant owes me at those rate is between $57,280 and $58,918.86.[2]

In addition, I claim liquidated damages of the same amount, because ALSTOM'S failure to pay me overtime was willful.

I also claim attorneys' fees and costs in excess of $35,000, based on bills sent me by my attorneys.  How they calculated the fees will be disclosed when they submit their petition for fees to the Court.

**Interrogatory No. 9:**  Identify each document associated with your application for employment with ALSTOM and/or Tech Aid.

**OBJECTION**:  Plaintiff objects to this interrogatory because it is ambiguous.  Plaintiff cannot know of every document associated with his application, especially documents generated by ALSTOM and/or Tech Aid, which he did not review then.  Without waiving his objection, plaintiff responds as follows:

---

[2]  In plaintiff's Initial Disclosures, plaintiff's counsel provided an estimate of his overtime rate. The total uncompensated overtime pay is thus different in these answers than in plaintiff's Initial Disclosures.

**ANSWER**: When I applied for the Tech Aid job, I submitted a resume and filled out an employment application. See Baker Depo. 97-98. When I applied for the permanent position with ALSTOM, I completed an application after an offer was made to me. The only copy of the employment application I have is what defendant provided in discovery. No resume was required for the ALSTOM position.

**Interrogatory No. 10:** Identify and fully describe any and all communications between you and any Tech Aid and/or ALSTOM employee regarding the offer of a "permanent position as either a salaried engineer or as an hourly technician" with ALSTOM as alleged in paragraph 10 of your *Complaint*, including in your Answer a detailed summary of each event and the identity of each person(s).

**ANSWER:** In September 2000, Matt Rivera and Curtis Moses approached me about becoming a permanent employee of ALSTOM. At an interview in September 2000, Mr. Rivera offered me a permanent position as either a salaried engineer or as an hourly technician. Mr. Rivera encouraged me to accept the engineering position, because, he said, management would look more favorably upon me and consider me for promotions and higher raises more quickly. Mr. Rivera said that, even though he was classified as a manager, ALSTOM paid him overtime pay. He also stated that I should submit overtime hours and that I may be paid overtime regardless of any exempt status. In addition, Mr. Rivera told me that after six months, management would review my hours and adjust my salary to compensate for the overtime I worked. Permanent relocation was requested at that time and months later I received a small bonus and relocation expenses. See my deposition, pp. 120-121, 123, and my Answer to Interrogatory No. 3 for more details.

**Interrogatory No. 11:** Identify and fully describe any and all communications between you and any Tech Aid and/or ALSTOM employee regarding any promise to compensate you for "overtime," including in your Answer a detailed summary of each event and the identity of each person(s).

**ANSWER:**  In April 2001, after being a permanent employee for six months, I submitted my self-evaluation forms to Mr. Moses in anticipation of a review.  Based on what Mr. Rivera had told me when I was hired by ALSTOM, and my offer letter (which stated I was eligible for a [salary] review after 6 months), I expected to receive a raise based on my many overtime hours worked, in addition to my excellent performance.  When I worked at Tech Aid, I received overtime pay.  Also, please see my Answer to Interrogatories No. 3 and 10.

**Interrogatory No. 12**:  Specifically identify each day that you worked "over nine hours a day," as alleged in paragraph 18 of your *Complaint*.

**ANSWER**:  For this information, please see my daily time records, which are among my initial disclosures.  From August 2001, when Alstom stopped paying overtime, until ALSTOM terminated my employment, there were only 9 weeks during which I worked less than 9 hours a day on the average (not including weeks when on vacation and one week without pay while suspended before termination).

**Interrogatory No. 13**:  Identify and fully describe any and all communications between you and any ALSTOM employee wherein that employee "recognized" that you were "no longer, if ever, an FLSA-exempt employee," as alleged in paragraph 19 of your *Complaint*.

**ANSWER**:  ALSTOM's payments of overtime pay to me over a long period of time indicated that it recognized that I was not a FLSA exempt employee.  Also see defendant's exhibit Bates Stamped ALS0059.

**Interrogatory No. 14**:  Identify each and every statement you made or document that you disclosed regarding your educational background during your employment application process with either any Tech Aid and/or ALSTOM employee, including in your Answer a detailed summary of each event and the identity of each person(s).

**ANSWER**:  I informed everyone at Tech Aid and ALSTOM who inquired that I had associates degrees and had not earned enough credits for a bachelor's degree. See my Answer to Interrogatory No. 3.

**Interrogatory No. 15:**  Identify and fully describe the details of your termination, which you characterize as wrongful and without good cause in paragraph 43 of your *Complaint,* including in your Answer a detailed summary of the facts relied upon to characterize your departure as such.

**OBJECTION**:  The interrogatory seeks information which is not relevant to any claims or defenses in this case and which could not possibly lead to the discovery of admissible evidence.  While plaintiff maintains that defendant wrongfully terminated him, his Complaint contains no claims of wrongful termination.

**ANSWER**:  On June 22, 2004, Gregory Thomas (who is African-American) provoked an incident with me, assaulting and cursing me.  Other than cursing Mr. Thomas back, I did not commit any misconduct.  However, by letter dated June 28, 2004, Ellie Snyder, Human Resources Manager, terminated me, allegedly because of the incident involving Mr. Thomas and me.  By discharging me, not Mr. Thomas, ALSTOM thus committed race discrimination and retaliated against me for having sought overtime compensation.  (It was not until late 2004 that ALSTOM decided to fire Mr. Thomas and only after he twice failed drug tests, in November 2004 and December 2004, and after he had been suspended for failing to take the drug test the first time, as well as ongoing disputes or fights with supervisors and peers over his failure to complete his assigned work.)

**Interrogatory No. 16:**  Identify and fully describe each communication between you and ALSTOM regarding your employment status, to include, but not limited to, conversations regarding alleged overtime hours worked, overtime compensation due or your exempt/non-exempt employment status.

**OBJECTION**:  The interrogatory is overbroad since it covers a long period of time (over four years) and a wide range of topics.  However, without waiving these objections, plaintiff responds as follows:

17

**ANSWER**: I had conversations with Mr. Rivera, Mr. Moses, Mr. Amar, Mr. Dimola, and Mr. Louis Gomez about the overtime which I worked. These conversations occurred on many occasions, for example, around pay periods, holidays, during my interview for the position, and during my conversation with Mr. Gomez.

Conversations with Mr. Rivera – See answer to Interrogatory number 10 3 and.

Conversations with Mr. Moses occurred on a daily, weekly, or biweekly basis, intensifying in frequency during late 2003 and 2004. They were legion, and I am astonished that Mr. Moses has denied any knowledge of them existing during his deposition. For the most part, they went somewhat like this. I objected to:

1) having to work alone, as this was a direct violation of OSHA regulations (one cannot work with voltages in excess of 35Vac or 50Vdc if one is alone. I was required to work with voltages of from 72Vdc to 2750Vdc and from 110Vac to 25000Vac);

2) having to work more than 8 hours a day without a lunch break, unless I was compensated for that work;

3) having to work every weekend (Mr. Moses hardly ever worked weekends and I can count on one hand the times I ever saw him on the work site on a weekend);

4) having to work an ALSTOM paid holiday without compensation.

Mr. Moses usually responded with similar words as follows: I have spoken to my superiors, and they are all aware, up to and including Jack Schroeder (Director of Field Services at that time) and persons in Human Resources, that you are working many long hours, and that the site is undermanned. We are trying to get more personnel and some way to compensate you, either overtime pay, a bonus at the end of the project, or some additional time off. Presently

there is nothing I can do, as I cannot afford for you to take more time off, and only higher ups can approve more pay, but we will do something.

Additionally, please see my answer to Interrogatory number 5 (Mr. Moses signed my timesheets) and copies of the signed sheets have been provided to counsel for the defendant; also, please see my answer to Interrogatory numbers 3 and 10.

Conversations with Mr. Amar – please see my answer to Interrogatory number 3. Mr. Amar on several occasions stated that he believed that not only I, but all Field Service personnel should be paid overtime, as most all of us did the same work, adding that he felt that it was unfair for some to be paid overtime and others not.

Conversations with Mr. Dimola – On many occasions I objected to having to stay late, as it often cost me more than a dollar a minute for each minute I was late picking up my child from my child's day care provider. Mr. Dimola stated often that he sympathized and that he was actively looking into reducing the number of my overtime hours worked, as well as seeking a way for me to be reimbursed for them. See also my Answer to Interrogatory number 3.

Conversations with Mr. Gomez – During an interview with Mr. Gomez on the phone as part of his audit, I spoke with him regarding the many hours I had worked overtime and the lack of compensation. I also spoke of HR's possibly reclassifying me as non-exempt. Mr. Gomez stated that this was part of what his audit was to determine.

Also see defendant's exhibit bates stamped ALS0059 is signed by Candace Hogan and dated 10/31/00. It specifically shows that at that time I was classified as an hourly employee, not salaried.

See also my Answers to Interrogatories 3, 10, 11 above.

**Interrogatory No. 17:** Identify each engineering-related course of study you have participated in or training that you have been afforded since graduating high school, to include in

your Answer, the inclusive dates that you engaged in such study and/or received the referenced training, to include in your Answer identification of any awards, certificates, diplomas or transcripts.

**OBJECTION**: The interrogatory is overbroad since it covers a long period of time (several decades). However, without waiving these objections, plaintiff responds as follows:

**ANSWER**: I attended the State University of New York at Binghamton, majoring in Electrical Engineering from 1994 to 1998 (mostly part time), and did not graduate. I have about 110 hours out of about 122 required credit hours. I have Associates Degrees in Engineering Science from Onondaga Community College (1994), in Electronic Engineering Technology from Tidewater Community College (1982), and in Automotive Technology from City Colleges of Chicago (1980). In the course of obtaining those degrees, I took many courses, most of which I do not specifically recall, and in the Navy, I took the following courses (as from my discharge papers, and listed on my resume):

1) Basic Electricity & Electronics (6 weeks)
2) Avionics "A" School (21 weeks)
3) Advanced First Term Avionics [Class Ranking: 3 of 12] (27 weeks)
4) E2-C Electronic Systems Analyst (32 weeks)
5) Airborne Early Warning Flight Technician (22 weeks,)
6) Avionics Communications Systems Technician (6 weeks)
7) NASA Solder Certification, Cable Repair (3 weeks)

I cannot recall the exact dates of any those courses since some of them were 25 to 30 years ago; nor can I recall all of the classes that I took at Tidewater Community College, since that was over 22 years ago; nor have I ever seen an official transcript from there. However, those classes, while they included mathematics, such as algebra and calculus, physics, and chemistry, were primarily for training as a technician, or preparation for transfer into a program for a BSEET, which at that time was not an ABET accredited or IEEE recognized degree. The

classes I took for Automotive Technology were not of an engineering nature, but were related to automotive repair.

**Interrogatory No. 18**:  Identify each engineering position/job that you have held since being discharged from the United States Navy, to include in your Answer, the inclusive dates that you worked for each employer, how you were compensated, identification of your job title, duties and responsibilities and the names of your managers/supervisors.

**OBJECTION**:  The interrogatory is overbroad because it covers over 24 years.  In addition, in his deposition, plaintiff provides the same information which defendant now requests.  Plaintiff objects to responding with respect to positions which he has held since defendant discharged him because the information about those positions is neither relevant to any claims or defense in this case nor reasonably likely to lead to the discovery of any admissible evidence.  Thus, while positions he held before working for ALSTOM gave him knowledge and experience which helped him qualify for the position at ALSTOM, the jobs he has held since then cannot possibly be relevant to the claims and defenses herein.  However, without waiving this objection, plaintiff responds as follows:

**ANSWER**:  In reverse chronological order, here are the jobs I had before applying to Tech Aid:

**Lockheed-Martin Controls / Power & Drive Systems  7/97 - 5/99**
     600 Main St
     *Johnson City, N.Y.*
     Title: Test Engineer
     Rate: $18$^{00}$ hourly
     Supervisor: Lee Bill

**BG Laboratories  6/97 - 8/97**
     *75 Travis Ave.*
     *Binghamton, N.Y. 13760*
     Title: Intern
     Rate: $7$^{00}$ hourly
     Supervisor: Richard Fitch - Test Department Supervisor

**McIntosh Labs  8/5/96 – 9/27/96**

*2 Chambers*
*Binghamton, N.Y.*
Title: Production Test Technician
Rate: $8$^{50}$ hourly
Supervisor: Jim Grim - Sue Ellen

**Wheatstone Corporation  4/1/91 - 10/11/91**
*6720 VIP Parkway*
*Syracuse, NY 13211*
Title: Production Test Technician
Rate: $10$^{00}$ - $11$^{25}$ hourly
Supervisor: Paul Pichard - Test Engineering Manager

**GE Aerospace  9/24/90 - 3/16/91**
Aircraft Control Systems Division Westover - Test Equipment Engineering
*PO Box 5000  (600 Main St Johnson City, NY)*
*Binghamton, NY 13905*
Title: Laboratory Specialist
Rate: $18$^{00}$ hourly
Supervisor: Roland Theodore - Manager - Test Equipment Engineering
Temp agency: TAD  217 Vestal Rd., Vestal, NY
Phone: 607-754-7447

**Cherokee Electronics Corporation   9/4/90 - 9/22/90**
1609C Diamond Springs Road, Virginia Beach, VA
Title: Electronics Technician - Level 3
Rate: $9$^{75}$ hourly
Supervisor: Robert Robinson - Foreman

**Contract Technical Resources** (temp agency) **3/20/90 - 08/16/90**
PO Box 12177
Newport News, VA
Title: Electronics Technician
Rate: $9$^{00}$ - $12$^{50}$ hourly
Agent: Arnold Boyd - President
Locations – Assignments :
  Continuous Electron Beam Accelerometer Facility (CEBAF)
    NASA Langley Research Park
    Newport News, VA
  Northern Industrial Services - GE Westover subcontractor
    Albany, NY
  Transonic Wind Tunnel - Wyle Laboratories
    NASA Langley Research Center
    NASA Langley Air Force Base
    Newport News, VA

**Grumman Aerospace - Field Operations** 12/28/83 - 3/10/90 (various locations)
    PO Box 15038
    Naval Air Station Norfolk, VA 23511
    Title: Field Service Engineer
    Rate: $19,250-36,174 yearly
    Supervisor: Nick Nazar - Program Manager - E2C Systems Compatibility & Update
        Assurance
    Locations/history with Grumman
    Temporary agencies - (permanent hiring freeze until 1985)
    General Devices, Inc. 3/26/85 - 11/15/85
        400 West 5th Street
        Escondido, CA 92025
        Agent: Bob Pierce
    KETRON, Incorporated 12/28/83 - 3/25/85
        4420 Hotel Circle
        San Diego, CA
        Agent: Gerry Brown
    E2C Hawkeye Program 12/28/83 - 3/25/85
        Naval Air Station Miramar, San Diego, CA
        USS Carl Vinson
    F14 Tomcat Program 3/26/85 - 11/15/85
        Naval Air Station Miramar, San Diego, CA
    E2C Hawkeye Program 11/16/85 - 3/10/90
        NAS Norfolk, VA; Grumman Plants 1/3/5 Bethpage, NY
        Naval Air Test Facility Patuxent River, MD; NAS Miramar, San Diego, CA;
        NAS North Island, San Diego, CA; Naval Air Station Atsugi, Japan;
        Naval Station Mayport, Florida; Naval Shipyard Newport News, Virginia;
        Naval Shipyard Norfolk, Virginia; Naval Shipyard Yokahoma, Japan
        USS America, USS Forrestal, USS Saratoga, USS John F. Kennedy, USS Coral
        Sea, USS Eisenhower, USS Midway, USS Carl Vinson, USS George Washington
        & USS Abraham Lincoln

**General Dynamics, Convair - Lindbergh Field**  10/1/83 - 1/5/84
    *Department 600 - Avionics*
    *3202 Pacific Coast Highway*
    *San Diego, Ca.  92101*
    Phone: Plant closed 12/27/95
    Title: R&D Avionics Engineering Technician
    Rate: $6$^{25}$ - $8$^{50}$ hourly
    Supervisor: Don Jasewski - Tech Pool Manager

**Volt Technical Services**  6/83 - 9/83
    *7940 Opportunity Road*
    *San Diego, CA 92111*
    Title: Electronics Technician
    Rate: $9$^{00}$ hourly

**Naval Air Rework Facility**  **6/16/82 - 6/1/83**
      Building LF-18 Shop 94214
      Naval Air Station Norfolk, VA 23511
      Title: Electronics Technician (civil service labor code WG-2409)
      Rate: $8$^{80}$ - $9$^{24}$ hourly
      Supervisor: Bob Ambs - Foreman

**Superior Engineering & Electronics Corporation**  **1/4/82 - 6/18/82**
      *4600 Village Avenue*
      *Norfolk, VA*
      Title: Electronics Technician Level II
      Rate: $7$^{50}$ hourly
      Supervisor: Robert Robinson - Foreman

**Heathkit Electronics Center**  **9/5/81 - 12/31/81**
      *1055 Independence Blvd.*
      *Virginia Beach, VA*
      Title: Electronic Service Technician
      Rate: $7$^{00}$ hourly
      Supervisor: Dalton Ott - Store Manager

**Better Business Systems**  **9/4/81 - 12/31/81**
      *5500 Virginia Beach Blvd.*
      *Virginia Beach, VA*
      Title: Apple & DEC Computer Service Technician
      Rate: $7$^{00}$ hourly  - part time

**United States Naval Reserve**
      Aviation Electronics Technician 1981-1987

**United States Navy**
      Aviation Electronics Technician 1975-1981

      **Interrogatory No. 19**:  Fully identify the required educational background requirement for the electrical engineer position that you accepted in October 2000 with ALSTOM as advertised in any job posting, vacancy announcement and/or application-related documentation.

      **ANSWER:**  No job posting or other listing of requirements were ever provided me at

that, or any other time, encompassing the course of my employment with ALSTOM.  Further,

Mr. Rivera and Mr. Moses indicated that an associate's degree was preferred, but not required,

and that a bachelor's degree was optional. Nonetheless, I did not have a bachelor's degree when

I applied and made that fact known to ALSTOM.

**Interrogatory No. 20**: Fully identify each and every representation made to you in ALSTOM's formal offer letter to you regarding whether the position of electrical engineer was exempt or non-exempt.

**ANSWER:** The letter, which is Bates-stamped no. ALS 0026-27 in defendant's initial

disclosures, provides the answer to this interrogatory.

**Interrogatory No. 21**: Fully identify each and every representation made by you to Tech Aid and/or ALSTOM regarding your educational background, in any performance self-evaluation and/or job audit, to include in your Answer communications that you had with any person regarding your representations.

**ANSWER**: I cannot remember every detail about what I said, to whom, and when I said

it. However, each time I told Tech Aid and ALSTOM officials that I had associates' degree and

was nearing completion of the coursework for my bachelor's degree. See also my Answer to

Interrogatory No. 3 above.

**Interrogatory No. 22**: Fully identify how you interacted with customers on a daily basis as an ALSTOM electrical engineer, to include in your Answer a general statement regarding your overall customer service responsibility in addition to specific examples of your dealings with customers.

**ANSWER**: My supervisor (Curtis Moses) directed me to interact with customers.

Although I figured out how to best repair ALSTOM's products when they failed, my supervisor

ultimately authorized all decisions relating to customer interaction. My interactions with

customers, then, were necessarily limited by what my supervisor permitted.

**Interrogatory No. 23**: Fully identify how you exercised independent judgment and/or decisions in your position as an ALSTOM electrical engineer, to include in your Answer a general statement regarding the types of overall judgment and/or decisions you made on a daily basis in addition to specific examples of your independent judgment and/or decision making.

**OBJECTION**: Plaintiff objects to the wording of the interrogatory to the extent that it

assumes that plaintiff "exercised independent judgment and/or decisions as an Alstom electrical

engineer," rather than asking if plaintiff did so. However, without waiving this objection,

plaintiff responds as follows:

**ANSWER:** I prioritized my work and decided which route would help me best

accomplish my tasks, but my supervisor oversaw my work and made the critical decisions

involving independent judgment that supervisors are well within their authority to make.

**Interrogatory No. 24**: Fully identify the types of tools, devices, resources, technical
manuals, computer-related equipment or programs and/or other tools of the trade that you
utilized in order to perform your job as an ALSTOM electrical engineer.

**ANSWER:**   I used the following tools: Desktop and laptop computers, oscilloscopes,

digital volt-ohm meters, mego-meters, hi-pot testers, hand tools such as wrenches, screwdrivers,

and other electronic bench test equipment, such as LCR and TDR meters. There were many

maintenance manuals, of which I do not recall the names, but provided by Alstom. There were

possibly many more tools or test equipment apparatuses, but I do not specifically recall all of

them at this time. Nor do I believe that any were of such a sophisticated nature that a well

trained technician could not operate them, with or without instruction in their usage.

**Interrogatory No. 25**: Fully identify each and every ALSTOM employee designated as
an electrical engineer that you claim has been afforded overtime compensation from March 2000
to present, to include in your Answer identification of every communication that you engaged in
with each such person(s) regarding their overtime compensation.

**ANSWER:** ALSTOM paid me overtime compensation between January and August

2001. In addition, ALSTOM paid Saluka Kulasinghe and Kofi Owusu-Ansah overtime pay,

when they too were classified as electrical engineers. After the audit in 2004, they were

reclassified as non-exempt employees, and continued to receive overtime pay. All Field Service

personnel were given new titles and or job descriptions (the descriptions did not previous exist)

and required to sign acknowledgement of such. ALSTOM paid others, included the two

mentioned above, retroactive overtime pay.  We have asked defendant about this, but have not received a complete response.

## VERIFICATION

I have read the foregoing Plaintiff's Answers to Defendant's First Set of Interrogatories to

Plaintiff and certify under penalty of perjury that the statements made in it are true and correct to

the best of my knowledge, information, and belief at this time.

Executed in Washington, D.C., November __16__, 2005.

_Kevin Patrick Baker_
KEVIN P. BAKER

Signed as to objections.

Respectfully submitted,

_Alan Banov_

ALAN BANOV #95059
NORBERTO P. SALINAS #474710
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036-3830
(202) 822-9699
Fax: (202) 842-9331
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2005, a copy of the foregoing Plaintiff's Answers

to Defendant's First Set of Interrogatories to Plaintiff was served by e-mail and by first-class

mail, postage-prepaid, upon the following counsel for defendant:

> Pamela J. White, Esq.
> Neil E. Duke, Esq.
> Ober, Kaler, Grimes & Shriver
> A Professional Corporation
> 120 East Baltimore Street
> Baltimore, MD 21202-1643

_Alan Banov_
ALAN BANOV