**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEVIN PATRICK BAKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ALSTOM TRANSPORTATION INC., ) <br> ) <br> Defendant. ) <br> ) | Civil File No.: 05-CV-01352 (RCL) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT**

Defendant, ALSTOM Transportation Inc. ("ALSTOM"), hereby respectfully files its *Reply to Plaintiff's Opposition to Summary Judgment* ("*Plaintiff's Opposition*"). The mountain of paper documents filed by Plaintiff, Kevin Patrick Baker ("Mr. Baker"), is a transparent contrivance to lend the appearance of disputable facts. However, Mr. Baker's critical admissions and his own successive acknowledgements of the requirements of ALSTOM's Electrical Engineer position (fully performed by Mr. Baker), all warrant entry of summary judgment for ALSTOM and denial of Mr. Baker's vacuous claim for overtime hours after his termination.

**ARGUMENT IN REPLY**

*A.    Plaintiff's Admissions of Important Material Facts Warrant Summary Judgment.*

The Local Rules of Practice for the United States District Court for the District of Columbia, Rule 7(h), instructs that any opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the

statement." *Id*. In his *Opposition*, Mr. Baker fails to challenge the factual allegations cited by ALSTOM in its *Motion for Summary*:

    1.    Mr. Baker "does not dispute" that he was hired in March 2000, by Tech Aid as a temporary employee and subsequently assigned to work at ALSTOM's Philadelphia, Pennsylvania job site.[1] *See Plaintiff's Response to Defendant's Statement of Relevant and Undisputed Facts* ("*Plaintiff's Response*"), at ¶ 1.

    2.    Mr. Baker has conceded his familiarity with ALSTOM's *Job Posting* by admitting "[b]ut this [Job Posting] could very well have been [the] one that I looked at five years ago on the – or four years ago, four and a half years ago on [ALSTOM's] intranet site"). *See* Baker Dep. Tr., at 147, attached hereto as **Exhibit A**. Mr. Baker offers nothing to contradict the existence of ASLTOM's *Job Posting*, which specified that a standard requirement for the Electrical Engineer position was "a minimum of 5 years experience in the rail industry," "five years experience within a design-engineering department as an Electrical Engineer or equivalent" and "a bachelor's or higher degree in Electrical, Electronic, or other appropriate engineering field."[2] *See Plaintiff's Response*, at ¶ 3.

    3.    Mr. Baker concedes that "it is true" that in October 2000, he "completed an *Employment Application* for the position of Electrical Engineer with ALSTOM."[3] *See* Baker Dep. Tr., at 129, **Exhibit A.**

---

[1] Nor does Mr. Baker dispute the nature of ALSTOM's business operations. *See Plaintiff's Response*, at ¶ 2.

[2] ALSTOM's *Job Posting*, "speaks for itself," notwithstanding Mr. Baker's irrelevant rambling regarding the expectations of ALSTOM managers, Curtis Moses and Gregory Muscato.

[3] In response to the question of whether he recalled filling out ALSTOM's *Employment Application*, Mr. Baker responded, "[y]eah. That would have been in October 2000." *See* Baker Dep. Tr., at 129, **Exhibit A**.

780117.1                   2

It remains unchallenged that Mr. Baker's *Employment Application* stated that he possessed a bachelor's degree in Electrical Engineering from SUNY Binghamton. Despite his attempts to be evasive with respect to this issue, Mr. Baker admitted that in the process of completing the *Employment Application*, he reflected that his "course or major" was in electrical engineering (Baker Dep. Tr., at 131, 132, **Exhibit A**), and that he noted how many years he attended SUNY Binghamton on the application (Baker Dep. Tr., at 131, **Exhibit A**). Mr. Baker suggests that he has no recollection whether he filled in the term "BSEE" (meaning Bachelor of Science in Electrical Engineering), on the Employment Application ("I don't recall exactly what I put there, if anything."). *See* Baker Dep. Tr., at 133, **Exhibit A**.

Mr. Baker's vacillation regarding what he represented to ALSTOM about his academic pedigree is noteworthy. During the course of his employment, Mr. Baker consistently advised that he was a "degreed Electrical Engineer". *See e.g.*, Mr. Baker's *Performance Self-Evaluation*, attached as Exhibits G and H (ALS 0358, 0367), to ALSTOM's *Motion for Summary Judgment*. However, upon initiating his litigation against ALSTOM, Mr. Baker expressed that he never held a bachelor's degree. *See Plaintiff's Complaint*, at ¶ 6. Then, during his deposition, as noted above, Mr. Baker testified that he was unsure what he represented on his ALSTOM *Employment Application* with respect to his completion of studies at SUNY Binghamton. Mr. Baker now states in his *Opposition* that he does not have a bachelor's degree, but admits that he completed the *Employment Application*, which reflected certain facts.

Plainly, Mr. Baker's inability or unwillingness to provide a sincere and consistent response does not create a genuine material dispute of fact.[4] *See e.g. Pyramid Securities,*

---

[4] Mr. Baker's apparent subterfuge and resume fraud is the subject of prior motions filed by the parties. *See* Court Doc. Nos. 13, 16, 26, and 27. It may be disputed whether Mr. Baker lied about his academic

780117.1                    3

*v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir.1991) (stating that, "[c]ourts have long held that a party may not create a material issue of fact simply by contradicting [her] prior sworn testimony . . . '[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later statement].'" (quoting *Martin v. Merrell Dow Pharmaceuticals, Inc*., 851 F.2d 703, 706 (3rd Cir. 1988). *See also Gagne v. Northwestern Ins. Co*., 881 F.2d 309, 315 (6th Cir. 1989) ("If a party who has been examined at length in deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

4. Mr. Baker admits that "it is true" that in October 2000, he was offered a full-time position with ALSTOM as an overtime exempt Electrical Engineer, that the offer letter "expressly informed [him] that he would be paid $55,000.00 per year on a salary basis," and that he signed the letter acknowledging its terms. *See Plaintiff's Response*, at ¶ 5.

5. Mr. Baker admits that "it is true" that "prior to accepting a position with ALSTOM as an overtime exempt Electrical Engineer, he possessed extensive experience in the field of engineering and electronics" and that he worked in all of the positions identified in ALSTOM *Motion for Summary Judgment*.[5] *See Plaintiff's Response,* at 6.

6. Mr. Baker admits that "[t]here is no dispute" that he "attended the identified academic institutions 'for the purpose of furthering his studies in engineering' and electronics." *See Plaintiff's Response*, at ¶ 7. Mr. Baker does not contest

---

degrees. It is not disputed that Mr. Baker's job at ALSTOM required advanced educational instruction and engineering experience.

[5] Mr. Baker's gratuitous commentary regarding his salary structure with prior employers is wholly irrelevant to the analysis of his instant claim against ALSTOM.

780117.1                                        4

ALSTOM's citation of the numerous electronic and technical courses that he attended. *Id.*

7.     Mr. Baker admits that "it is true" that he used certain technical tools in conjunction with his ALSTOM Electrical Engineer position, such as an oscilloscope, digital volt meter, HI-POT, chart recorder and capacitance meter. *See Plaintiff's Response*, at ¶ 8. Mr. Baker concedes that college-level courses provide instruction on how to use these highly technical tools. *See Plaintiff's Response*, at ¶ 8 (citing the testimony of ALSTOM manager, Curtis Moses).

8.     Mr. Baker admits that "it is true" that he "was responsible on a daily basis for troubleshooting and providing technical maintenance of ALSTOM's high-speed trains, specifically its AMTRAK operations." *See Plaintiff's Response*, at ¶ 9. Mr. Baker admits that "it may be true" that he "exercised a greater degree of independent judgment than a regular technician." *Id.* ("I prioritized my work and decided which route would help me best accomplish my tasks . . ."). *Id.*

9.     Mr. Baker admits that he was "somewhat" self-directed.[6] *See Plaintiff's Response*, at 11. Mr. Baker admitted to this same fact (in less vague terms), when responding to a job audit of his position in 2003. Specifically, Mr. Baker admitted that "he was primarily self directed with respect to his daily activities" and that "he made his own decisions on how to prioritize his work activities." *See also*, Baker Dep. Tr., at 196, 297 (in describing himself as a "technician," Mr. Baker observed that, "a technician is often at the wits of his -- at the - - at his own – he's often required to use his own mental

---

[6] Please also refer to the deposition transcript of Mr. Baker's immediate supervisor, Curtis Moses (Moses Dep. Tr., at 97), attached hereto as **Exhibit B**:
   Q: Isn't it true that Kevin [Baker] mostly worked alone?
   A: Yes.
Mr. Baker's suggestion that Mr. Moses's cited deposition testimony does not reflect the fact that he (Mr. Baker), worked independently is erroneous.

780117.1                                                5

resources to tackle the – whatever position has been – or whatever duties have been assigned to him without the supervisor directly over you telling you to do step by step by step by step what to do. Otherwise, you're an incompetent technician."). *Id.*

10. Mr. Baker "does not deny" that his performance was measured through periodic *Performance Self Evaluations*. *See Plaintiff's Response*, at ¶ 13. Mr. Baker admits to the substance of the representations that he made on the 2002 and 2003 evaluations. *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 13. Mr. Baker does not contest that he stated on his *Performance Self Evaluations* that he was a "degreed Electrical Engineer with 20 plus years of technical experience, the last 5 years have been in the rail road industry, both in the lab [and] field." *Id.* Finally, Mr. Baker does not deny that he was designated as an ALSTOM Lead Engineer in 2003. *Id. See also, Plaintiff's Response*, at ¶ 14 ("even after [Mr. Baker] became the project lead . . ."). *Id.*

11. Mr. Baker does not deny that as a Project Lead that he was responsible for managing the "day-to-day activities, troubleshooting, interfacing with the customer, engineering investigation, technical analysis and reported back to [ALSTOM's operating location in France] on a weekly basis. *See ALSTOM's Motion for Summary Judgment*, at ¶14; *see also Plaintiff's Response*, at ¶ 14 (conceding that Mr. Baker was designated as ALSTOM's Project Lead).[7] Mr. Baker does not contest the fact that as a Project Lead he was tasked with the oversight of six (6) locomotives that were assigned to the Maryland Department of Transportation ("MDOT"). *Id.* Nor does Mr. Baker oppose the fact that

---

[7] Mr. Baker admits that he was designated as ALSTOM's Project Lead, but argues that he held no managerial responsibilities. However, the critical issue in this case is whether Mr. Baker was properly classified as an exempt "professional" employee, not whether Mr. Baker was misclassified as an exempt "executive" or "administrative" employee. As such, Mr. Baker's allegations that he did not function as a supervisor is of no moment.

780117.1                                6

he supervised the efforts of various technicians employed by the MDOT.[8]  *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 14.

12.  Mr. Baker admits that ALSTOM's explanation of its *Job Audit* and the responses that he provided in conjunction with that exercise are "generally correct."[9]  *See Plaintiff's Response*, at ¶ 15.  Mr. Baker also admits that ALSTOM has "correctly quote[d]" his "boasting about his qualifications."[10]  *Id*.  Mr. Baker does not contest that ALSTOM undertook its *Job Audit* to remain compliant with the Fair Labor Standards Act.  *Id*.

13.  Mr. Baker concedes that "there is no dispute" that "[i]n May 2003, around the same time [he] was assigned duties as ALSTOM's Project Lead, his salary was increased to $59,854.00."  *See Plaintiff's Response*, at 16.  Mr. Baker also admits that he received and benefited from "comp time."  *Id*.

14.  Mr. Baker does not contest that during the relevant period of time, he was designated as a "key employee," which was defined by his immediate supervisor, Curtis Moses, as "[s]omeone that is . . . responsible, someone that follows through on assigned

---

[8] Mr. Baker instead expends needless energy arguing that he was not technically assigned as the supervisor of any MDOT employee.  Mr. Baker's protest is an artful attempt to avoid the critical issue and does not contradict the fact that he *supervised the efforts* of MDOT employees, by providing them with "technical instructions of certain troubleshooting tasks to perform," while serving as an ALSTOM Project Lead.  *See* Moses Dep. Tr., at 188, **Exhibit B**.  Mr. Baker also trained the MDOT employees and gave them orders.  *See* Moses Dep. Tr., at 166, 167, **Exhibit B**.  These facts are beyond dispute.

[9] In its *Motion for Summary Judgment*, ALSTOM enumerated a lengthy description of Mr. Baker's self-identified job tasks and duties.  *See ALSTOM Motion for Summary Judgment*, at ¶ 15.  Mr. Baker fails to adequately contest these facts, and only takes issue with the alleged characterization of his job audit responses.

[10] Mr. Baker does not state specifically what aspect of his *Performance Self Evaluation* was "boastful" or "puffing."  However, based on the context of his response, it is reasonable to conclude that Mr. Baker is referring to his declarations to ALSTOM that he possessed a B.S. degree in Electrical Engineering from SUNY Binghamton.  Mr. Baker's cavalier reference to his resume fraud and attempt to minimize his deceit are rather revealing.

tasks, someone that you favor, to be able to give a more difficult task to.").[11]  *See* Moses Dep. Tr., at 182, 184, **Exhibit B**.  *See also Plaintiff's Response*, at ¶ 17.

B.   *It Is Beyond Dispute That The Relevant Period Of Time At Issue In This Matter Is Limited To April 18, 2003 To June 28, 2004.*

According to the FLSA, employees are precluded from pursuing claims for overtime compensation beyond the two-year statute of limitations.  *See* 29 U.S.C. §255(a).  Mr. Baker was terminated for assaulting one of his ALSTOM colleagues on June 28, 2004 and filed his civil *Complaint* for overtime compensation against ALSTOM on April 18, 2005.  The relevant time frame subject to debate in this matter is limited by those dates.  Plaintiff offers no adequate argument to the contrary.  Mr. Baker's failure to challenge this point confirms that the relevant period of time in this matter is limited to the dates inclusive of April 18, 2003, to June 28, 2004.[12]

C.   *Plaintiff's Duties Squarely Fit Within Those Of An Exempt Professional Employee.*[13]

   1.   Plaintiff exercised discretion and independent judgment.

Under the "duties test," ALSTOM must demonstrate that Mr. Baker consistently exercised discretion and independent judgment with respect to his position as an Electrical Engineer.  *See* 29 C.F.R. § 541.3(e).  Without question, Mr. Baker exercised discretion and independence, consistent with those of an exempt professional employee under the FLSA.  Specifically, Mr. Baker has observed that, (a) he exercised a greater

---

[11] Inexplicably, Mr. Baker interjects the subject of FMLA despite Mr. Moses's clearly stated testimony regarding ALSTOM key employees.  *See Plaintiff's Response*, at ¶ 17.

[12] In belated fashion, Mr. Baker postures his value judgment that ALTOM willfully violated the FLSA, thus he is entitled to three years of back pay.  *See Plaintiff's Opposition*, Section E.  However, Mr. Baker completely and purposefully ignores the fundamental legal principles cited in ALSTOM's *Motion for Summary Judgment* on this issue.  *See* ALSTOM's *Motion for Summary Judgment*, FN 21.  Mr. Baker's failure to address those points is fatal to his claim for additional back pay.

[13] There is no dispute that Mr. Baker was appropriately paid on a salary basis; nor is there any suggestion that there were improper deductions made with respect to his salary.

780117.1                                      8

degree of independent judgment than a regular technician (Section A, *supra*, at ¶ 8); (b) he was primarily self directed with respect to his daily activities (Section A, *supra*, at ¶ 9); (c) he made his own decision on how to prioritize his work activities (Section A, *supra*, at ¶ 9); and (d) he prioritized his work and decided which route would help him best accomplish his tasks (Section A, *supra*, at ¶ 8).[14]

Mr. Baker's immediate supervisor, Curtis Moses, in describing Mr. Baker's exercise of independent judgment, testified that Mr. Baker "would basically be given a very broad knowledge of the particular fault or an anomaly on a locomotive. And from there he would diagnose the problem with the train on his own." *See* Moses Dep. Tr., at 189, 190, **Exhibit B**. Additionally, Mr. Baker's duties, responsibilities and exercise of independent decision-making consistently increased during his tenure as an ALSTOM Electrical Engineer as a result of the departure of French engineers from the job site. Mr. Moses described the impact of the departure of these French ex-patriots on Mr. Baker's position as follows: "It greatly increased [Mr. Baker's] responsibilities as each ex-pat would leave. Prior to him leaving each ex-pat would basically sit down with Kevin Baker and release a lot of technical information to Kevin to basically learn whatever system that ex-pat was, you know, trying to be a specialist on." *See* Moses Dep. Tr., at 191, **Exhibit B**.

In contrasting the level of independent judgment exercised by technicians versus ALSTOM Electrical Engineers such as Mr. Baker, the difference is glaring. Curtis Moses's testimony was unchallenged that a "[t]echnician would pretty much . . . use his judgment based upon a manual, a troubleshooting manual. And have to rely upon another more experienced personnel to give them . . . some type of leadership doing

---

[14] Mr. Baker's immediate supervisor, Curtis Moses, testified that he only spent 10% of his normal work day in contact with Mr. Baker. *See* Moses Dep. Tr., at 81, **Exhibit B**.

troubleshooting. [An] Engineer, would have more independent thought . . . and basically training to make snap judgments on releasing the train for revenue service." *See* Moses Dep. Tr., at 184, **Exhibit B**.

Mr. Baker has separately conceded that during the relevant period of time that he was employed as an ALSTOM Electrical Engineer, he served as a Project Lead and key employee. *See* Section A, *supra*, at ¶¶ 10, 14. As a Project Lead, among other things, Mr. Baker was tasked with the oversight of six (6) locomotives assigned to the MDOT. *See* Section A, *supra*, at ¶ 11. Mr. Baker was also responsible for managing the day-to-day activities, troubleshooting, interfacing with the customer, engineering investigation, technical analysis and reporting back to [ALSTOM's operating location in France] on a weekly basis. *Id*.

Mr. Baker's admissions and the absence of any material dispute of fact regarding his exercise of discretion and independent judgment are fatal to his claim that he was misclassified as an exempt professional employee.[15] ALSTOM is entitled to summary judgment as a matter of law.

> 2. <u>Plaintiff's position as an ALSTOM Electrical Engineer required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.</u>

Mr. Baker's position as an ALSTOM Electrical Engineer clearly needed to be occupied by someone who could perform work that required advanced knowledge. Mr. Baker, by his own admission, certainly fit that description. Mr. Baker professed that he held over 20 years of experience in the industry prior to accepting a position as an Electrical Engineer with ALSTOM. *See* ALSTOM's *Motion for Summary Judgment*, at ¶

---

[15] Mr. Baker also exercised independent decision making and judgment by selecting which locomotive he would service. *See* Moses Dep. Tr., at 74, **Exhibit B**.

6, (detailing Mr. Baker's professional work history in the fields of electronics and engineering and dating back to 1981).[16]

Mr. Baker does not dispute the existence of ALSTOM's standard *Job Posting*, which detailed the academic requirements of his ALSTOM position. *See* Section A, *supra*, at ¶ 3. Applicants, such as Mr. Baker, were advised that the position required, among other things, (a) "a minimum of 5 years experience in the rail industry; (b) "five years experience within a design-engineering department as an Electrical Engineer or equivalent; and (c) a bachelor's or higher degree in Electrical, Electronic, or other appropriate engineering field." *Id*.

Mr. Baker concedes that he undertook and benefited from meaningful, substantial and extensive academic training. *See* Section A, *supra*, at ¶ 6. Mr. Baker attended the SUNY Binghamton, Thomas J. Watson School of Engineering, a well respected academic institution. *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 7, FN 6. A representative sampling of the courses that Mr. Baker attended as a SUNY Binghamton student are as follows:

- Electromagnetic Fields & Waves;
- Technical Communications;
- Electronics I;
- Introduction to Probability & Statistics;
- Trans. Lines & Antennas;
- Digital Systems;
- Fundamentals of Electromechanics;
- Engineering Practice III;
- Introduction to Control Systems;
- Linear & Sampled Data Control;
- Semiconductor Devices; and
- Introduction to Electro-Optics.

---

[16] Mr. Baker admits that "it is true" that he possessed the extensive professional experience described in ALSTOM's *Motion for Summary Judgment*. *See* Section A, *supra*, at ¶ 6.

780117.1                                     11

Mr. Baker's studies far exceeded those of a standard four-year degree. Mr. Baker has suggested that he needed to complete 122 credit hours to finalize all of the requirements for his bachelor of science degree in Electrical Engineering from SUNY Binghamton. A review of Mr. Baker's SUNY Binghamton academic transcript discloses that he completed no less than 117 credit hours. *See* Plaintiff's SUNY Binghamton Transcript, attached as Exhibit 10 to *Plaintiff's Opposition*. What Mr. Baker fails to mention is that he also possesses an additional 32 academic "credit hours" at SUNY Binghamton that were not advanced toward his anticipated bachelor's degree because he took, but did not pass eleven (11) additional courses. *Id*.

In addition to his efforts and academic pursuits at SUNY Binghamton, Mr. Baker also possesses two Associates Degrees; one from Tidewater Community College in Electronic Engineering Technology and a separate degree from Onondaga Community College in Engineering Science. *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 7. Mr. Baker has also attended college courses at the City Colleges of Chicago and Old Dominion University.[17] *Id*. Given Mr. Baker's multiple associate's degrees, attendance at multiple colleges and military academic training, and his surplus of credit hours at SUNY Binghamton, any suggestion on his part that he did not engage in a prolonged course of specialized intellectual instruction would fall flat.

More importantly, Mr. Baker utilized his advanced academic training to accomplish his duties as an ALSTOM Electrical Engineer, especially with respect to his performance as an ALSTOM Project Lead. *See* Section A, *supra*, at 12. Mr. Baker was responsible for independently resolving highly technical problems, proposing

---

[17] Despite discovery requests dating back to October 2005, Mr. Baker has failed to provide full disclosure of his complete academic transcripts.

780117.1                                 12

methodology for dealing with high-speed locomotive faults and anomalies,[18] conducting technical analysis, performing engineering investigations, writing daily reports regarding technical difficulties experienced by the locomotives and evaluating software and hardware problems.  *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 13; *see also* Section A, *supra*, at ¶¶ 11, 12.  Furthermore, Mr. Baker professed his expertise in Power Electronics, Electrical Machines and Analog/Digital Control, and skills acquired through cross-training on other high-speed locomotive projects (AEM-TAC and NEX-FPA/AMTRAK Acela).  *See* ALSTOM's *Motion for Summary Judgment*, at ¶ 13.  <u>*See also* Section A, *supra*, at 10.</u>  These facts are undisputed.  Clearly, Mr. Baker, as an ALSTOM Electrical Engineer, possessed unique talents and had job duties that required knowledge of an advanced type in a recognized field of science, consistent with his role as an exempt professional employee.  It is undisputed that the technology involved in maintaining high-speed locomotives is nuanced.  Curtis Moses testified that "[w]ith the new technology that the United States received with the high-horse powered locomotives from AMTRAK in Maryland and the high-speed train set, the job set in America was only limited to the people that we hired for the project, whether it was ex-pats or American.  So we basically, as ALSTOM, only had the technology to troubleshoot the train."  *See* Moses Dep. Tr., at 192, **Exhibit B**.  In light of these facts, any attempt by Mr. Baker to suggest that his former Electrical Engineer position with ALSTOM could have been occupied by anyone with minimal skills, limited training and no advanced education should be disregarded as patently disingenuous.

---

[18] The testimony of Mr. Baker's immediate supervisor, Curtis Moses, is unchallenged that fixing anomalies "required someone with [a] stronger electrical or electronic expertise to troubleshoot the equipment."  Because, "[I]t may require instrumentation of the vehicle, diagnostic software, the use of also a laptop as well.  That was the interface."  *See* Moses Dep. Tr., at 78, **Exhibit B**.

780117.1                                                13

D. *Plaintiff's Allegation That He Received "Overtime Compensation" Misstates The Circumstances.*

Mr. Baker alleges that between the months of January to August 2001 he was paid overtime compensation, accordingly, ALSTOM recognized that, "he was no longer, if ever, an FLSA-exempt employee." *See Plaintiff's Opposition*, at Section B. Mr. Baker's allegation misstates the facts and fails to provide the Court with full disclosure of the circumstances known to Baker. As explained to Mr. Baker and his counsel separately by ALSTOM managers and 30(b)(6) witnesses, Curtis Moses and Gregory Muscato, between January to August 2001, there was an administrative oversight within ALSTOM's payroll department that caused Mr. Baker (and other exempt employees), to be inadvertently compensated for "overtime." The extra payments did not change any employee's exempt status on the payroll.

In 2001, exempt employees, such as Mr. Baker, were paid on a salary basis for the 40 hour week that they worked. ALSTOM employees were required to fill out timesheets that reflected the total amount of time that they worked, to include time spent on the job that exceeded a 40-hour work week. The reason behind this practice was the reality that an employees' total hours worked were assigned against "charge codes" or cost centers for administrative and billing purposes. *See* Moses Dep. Tr., at 121, **Exhibit B**. Between January to August 2001, payroll department clerks misread the timesheets, incorrectly assumed that all overtime hours were compensable, and mistakenly paid "overtime compensation" to Mr. Baker and other exempt employees.[19] *See* Moses Dep. Tr., at 145, **Exhibit B**; *see also* Muscato Dep. Tr., at 97, **Exhibit C**. ALSTOM corrected the error by instructing its employees and managers to reflect overtime hours differently

---

[19] Notably, Mr. Baker's counsel repeatedly attempted to silence ALSTOM's 30(b)(6) witness, Gregory Muscato when Mr. Muscato attempted to explain the circumstances surrounding the inadvertent payment of "overtime compensation" to Mr. Baker. *See* Muscato Dep. Tr., at 97, **Exhibit C**.

780117.1                                14

on payroll records and educating its payroll department. *See* Muscato Dep. Tr., at 99, 100, **Exhibit C**.

In sum, Mr. Baker's receipt of alleged "overtime compensation" does not transform his exempt professional status to that of a non-exempt employee. Even, assuming *arguendo*, that ALSTOM voluntarily elected to provide Mr. Baker or any other exempt employee with additional compensation calculated in a form resembling "overtime," that fact would not affect their exempt status. *See* 29 C.F.R. § 541.118(b) ("Minimum guarantee plus extras. It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment."); *see also Boykin v. Boeing*, 4 Wage & Hour Cas.2d 292 (9th Cir. 1996).

### E.   *The Improvident Affidavit Filed By Plaintiff's Counsel Must Be Disregarded.*[20]

Mr. Baker's counsel's misguided filing of an affidavit in support of *Plaintiff's Opposition* must be disregarded as a thinly-veiled attempt to salvage a weak overtime claim. In his affidavit, Mr. Baker's counsel claimed that he needed certain information and documents to respond to ALSTOM's *Motion for Summary Judgment*. This contention is frivolous in light of the fact that the information and/or documents cited within the affidavit have already been produced or made available to Mr. Baker and his counsel. For instance:

- ALSTOM designated Mr. Baker's immediate supervisor, Curtis Moses as its 30(b)(6) witness and made him available to discuss any details regarding "the duties of electrical engineers in Washington, D.C., during the period between January 1, 2001, and December 31, 2004. *See Banov*

---

[20] It is also important to note that Mr. Baker has failed to compensate ALSTOM for the copying costs of the volumes of documents ALSTOM produced in December 2005, despite his prior commitment, through counsel, to pay promptly remit payment. *See ALSTOM Letter*, dated December 23, 2005, attached as Exhibit 11 to *Plaintiff's Opposition*. Mr. Baker's delinquency underscores the insincerity of his counsel's affidavit, complaining of documents not produced.

780117.1                                15

   *Affidavit*, at B.  Mr. Moses provided abundant testimony regarding Mr. Baker's job duties as an ALSTOM Electrical Engineer and regarding his supervision of Mr. Baker.  *See Banov Affidavit*, at E.

- ALSTOM also provided Mr. Baker with copies of all documents in its possession that relate to advertisements for electrical engineer positions or any other positions which were substantially similar to Mr. Baker's.  *See Banov Affidavit*, at C.  On December 23, 2005, ALSTOM reminded Mr. Baker of its prior responsive submissions that related to this request (ALS 0022; ALS 0372 and ALS 2696 – 2698).

- ALSTOM produced relevant "job descriptions" to Mr. Baker (ALS 0022, ALS 371 – 374, ALS 2696 – 2698).  *See Banov Affidavit*, at D.  Mr. Baker similarly produced job description material to ALSTOM, demonstrating that these documents were already in his possession.[21]

- ALSTOM has produced documents explaining why Mr. Baker was classified as an exempt professional employee.  *See Banov Affidavit*, at G.  Specifically, ALSTOM advised Mr. Baker to refer to ALS 0023 – 0025, wherein Mr. Baker represented himself as a college graduate with a B.S. degree in Electrical Engineering; ALS 0026 – 0027, wherein Mr. Baker accepted his ALSTOM position as an overtime exempt Electrical Engineer; ALS 0041 – 0045, wherein Mr. Baker described how his education, training and job duties qualified him for his position as an overtime exempt Electrical Engineer; and ALS 0356 – 0370 (Mr. Baker's *Performance Self-Evaluations*), wherein he once again described how his performance and skills satisfied those of an ALSTOM overtime exempt Electrical Engineer.  Mr. Baker, himself, produced documents responsive to the issue of the propriety of his classification.[22]

- ALSTOM definitively responded to Mr. Baker's inquiry regarding the company's involvement in any other complaints or suits for overtime pay.  *See Banov Affidavit*, at J.  In its supplemental answers to Interrogatories, Mr. Baker was advised that ALSTOM was "unaware of any other 'complaints or suits.'"[23]  ALSTOM's 30(b)(6) witness, Gregory Muscato also testified that he was unaware of any such suit.  *See* Muscato Dep. Tr., at 28, **Exhibit C**.

- In its December 23, 2005, supplemental discovery response, ALSTOM provided Mr. Baker with the overtime payment records of its relevant workforce (ALS 2666, 2667, 2703 – 2705).  *See Banov Affidavit*, at I; *see*

---

[21] Mr. Baker's failed to bates stamp his document production, accordingly, a specific page citation cannot be provided.

[22] As previously stated, Mr. Baker's failure to properly bates number his document production makes it impossible to provide a specific citation.

[23] Namely, ALSTOM's *Response to Plaintiff's Objection to Interrogatory No. 22*.

780117.1

16

*also* ALSTOM's December 23, 2005, supplemental discovery response attached as Exhibit 11 to *Plaintiff's Opposition*.

Mr. Baker has either failed to properly review the abundant discovery that ALSTOM has provided to him, or the affidavit filed by his counsel is a contrived attempt to conjure a dispute where none exist. Whatever the case may be, the affidavit filed by Mr. Banov, must be disregarded as an improvident and unnecessary filing.

Fed.R.Civ.P., Rule 56(f) permits a party to file an affidavit stating the reasons why it cannot justify its opposition in the context of summary judgment. Mr. Baker's claim that he lacks certain facts to oppose ALSTOM's *Motion for Summary Judgment* is misguided. Rather, the root of Mr. Baker's inability to contest ALSTOM's motion is the fact that his claim of misclassification as an exempt professional lacks merit.

WHEREFORE, Defendant, ALSTOM Transportation Inc., respectfully requests that the Court issue an *Order* granting its *Motion for Summary Judgment*.

Respectfully Submitted,

_____/s/_____
Pamela J. White (D.C. Bar No. 962787)
Neil E. Duke (D.C. Bar No. 471942)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 East Baltimore Street
Baltimore, MD  21202-1643
(410) 685-1120

Attorneys for Defendant, ALSTOM Transportation Inc.

Dated: January 20, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEVIN PATRICK BAKER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil File No.: |
| | ) |
| ALSTOM TRANSPORTATION INC. | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 20th day of January 2006, that a copy of the foregoing *Defendant's Reply to Plaintiff's Opposition to Summary Judgment* was served electronically and by regular mail upon Plaintiff's counsel identified below:

Alan Banov, Esquire
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036

                                                _____/s/_____
                                                Pamela J. White (D.C. Bar No. 962787)
                                                Neil E. Duke (D.C. Bar No. 471942)
                                                Ober, Kaler, Grimes & Shriver
                                                A Professional Corporation
                                                120 East Baltimore Street
                                                Baltimore, MD  21202-1643
                                                (410) 685-1120
                                                (410) 547-0699 – Fax

                                                Attorneys for Defendant, ALSTOM
                                                Transportation Inc.